[No. 4146.]

NEWBY v. THE PEOPLE.

1. ASSAULT—SELF DEFENSE—DEFENSE OF PROPERTY—INSTRUCTIONS.
   In a prosecution for assault with intent to murder and of assault with a deadly weapon, where the difficulty grew out of a dispute as to the amount of water defendant was entitled to take from a joint irrigating ditch, where the prosecuting witness was threatening to remove a board defendant had placed across the ditch to increase the flow through his headgate and where the evidence shows that defendant threatened to strike the prosecuting witness with an irrigating shovel which he held in his hand if he interfered with the board, whereupon the prosecuting witness seized hold of the shovel and attempted to wrest it from defendant's hands and struck defendant several blows and defendant after retreating several steps drew a revolver and told his adversary that he would shoot him if he did not loosen his hold of the shovel and quit striking him and fired the pistol twice in the air and the prosecuting witness continuing to strike defendant and continuing his efforts to get possession of the shovel defendant shot him, claiming that he did so to protect his own life and to escape great bodily harm which he apprehended; an instruction that a bare trespass against the property of another was not sufficient provocation to warrant the owner in using a deadly weapon in its defense and that if he did so and killed the trespasser it would be murder, although such killing were necessary to prevent the trespass, whatever may be said of it as an abstract proposition of law, was inapplicable to the facts of the case and was misleading and erronious, even though elsewhere the jury were correctly instructed as to self-defense.

2. SAME.
   In a prosecution for assault with intent to murder and of assault with a deadly weapon where the difficulty grew out of a dispute as to the relative rights of the defendant and the prosecuting witness to the use of water from a joint irrigating ditch and there was evidence that the prosecuting witness was storing water in a fish pond while defendant needed it for irrigation, although the only legitimate defense the defendant had was the defense of his person, yet where the court had told the jury by other instructions that defendant fired the shot to protect his property, he should have given an instruction asked by defendant to the effect that when needed for immediate use for irrigating lands by others having such right, one might not divert water from a natural stream for storage purposes.

3. ASSAULT WITH DEADLY WEAPON—INSTRUCTIONS—INFERENCE.
   In a prosecution for assault with intent to murder and for assault

with-deadly weapon an instruction that told the jury in ordinary and appropriate language that from the use of a deadly weapon by defendant they might infer malice had death resulted is not objectionable as telling the jury as matter of law what the inference was, nor does the fact that death did not result make the instruction inapplicable.

4. ASSAULT—CARRYING CONCEALED WEAPONS—PRACTICE—IMPROPER REMARKS BY COUNSEL.

In a prosecution for assault with intent to murder and with a deadly weapon, where the prosecuting attorney upon cross examination of the defendant attempted to draw from the witness the fact that he had been in the habit of carrying a revolver and had at other times shot at men which being objected to the attorney stated: "This testimony is offered as to the defendant's habits, to find out whether he is in the habit of carrying a gun to shoot people, which he has done in that neighborhood promiscuously for several years," it was not a sufficient protection of defendant's rights for the court, merely to sustain the objection to the testimony. He should have strongly rebuked counsel and have cautioned the jury against being influenced by such improper statements and such method of interogation.

*Error to the District Court of Boulder County.*

Mr. THOMAS MACON, Mr. H. M. MINOR and Mr. A. H. MARTIN for plaintiff in error.

Mr. D. M. CAMPBELL attorney general, Mr. CALVIN E. REED and Mr. DAN B. CAREY, assistants attorney general, and Mr. A. C. PATTON for the people.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The information has two counts, the first charging against defendant an assault on Benjamin W. Calkins with the intent to murder him; the second, an assault with a deadly weapon to commit a bodily injury upon Calkins where no considerable provocation appeared, and all the circumstances showed an abandoned and malignant heart. He was found guilty under the second count and sentenced to the county jail for eight months and to pay a fine of $500.

To a clear understanding of the questions determined a summary of a part of the evidence is essential. The defendant, the prosecuting witness, Benjamin W. Calkins, and some other persons, were jointly interested in an irrigating ditch and used the same lateral therefrom in carrying water to their agricultural lands. There was a dispute between them, not so much as to the ownership of the ditch and its water rights, but respecting the distribution of water and the quantity to which the different parties were entitled at the time of the shooting for which the defendant was tried. In order that defendant might get water on his land, he had placed across the lateral ditch a board at or near the headgate where he made his diversion, so that the level of the water might be raised. Just before the shooting defendant and three other co-owners, all hostile to him, were at this headgate and engaged in a spirited verbal altercation concerning the water, in which vile and abusive epithets were applied to defendant by Calkins. The details of the dispute are not material. It is sufficient to say that it ended by a statement from defendant to the prosecuting witness Calkins that if the latter removed this board, as he threatened to do, that he (defendant) would strike him with an irrigating shovel which defendant then held in his hand. Calkins at once arose from the stooping posture in which he was, in the act, apparently, of removing the board, and seized one end of the shovel in his hands, accompanying the act with a blow or a push against defendant's neck. Defendant retreated a number of steps, and there was testimony tending to show that Calkins endeavored to wrest the spade from the defendant's hands and struck him several blows on the head with his fist.

The defendant had a revolver in his pocket, which he drew and told Calkins if he did not loosen his hold on the shovel or cease striking that he would shoot. This seemed to make no impression on Calkins, and plaintiff then fired in

the air two shots, but there was no cessation of the efforts of his adversary, but, on the contrary, the latter followed up the blows already given with others, still trying to get possession of the spade. The defendant then fired two more shots, one taking effect in Calkins' arm, the other in his abdomen. Calkins then desisted in his efforts and, turning, walked away, and the difficulty then stopped.

The foregoing is not a resume of all of the testimony in the case. In fact, it took a very wide range, much of it relating to the claim of ownership in the ditch and the water rights and the quantities which the different owners were using or entitled to have. While conflicting, there was evidence such as we have adverted to.

1. In his examination defendant gave as the reason for firing the shots which took effect on Calkins' body that he did so for the purpose of protecting his own life, and to escape great bodily injury which he apprehended at the hands of Calkins. After instructing the jury on the law of self-defense, the court, over the objection of defendant, gave this instruction:

"The court instructs the jury that it is well settled that a bare trespass against the property of another is not sufficient provocation to warrant the owner in using a deadly weapon in its defense, and if he do so, and with it kills the said trespasser, it will be murder, and this, though the killing were actually necessary to prevent the trespass. The rule is the same, whether the trespass be upon real or personal property; the law does not justify the shedding of human blood to prevent slight injuries to the property of others."

Whatever may be said as to this instruction as an abstract legal proposition, we are clear that it was inapplicable to the facts of this case, and, considering the entire record, that it inevitably misled the jury. Even though, elsewhere, the jury were correctly instructed as to what does, and what does not, constitute self-defense, they could, and probably did,

under this instruction conclude that the attempt of Calkins to take the spade, or interfere with defendant's water right, did not constitute a sufficient provocation for defendant's shooting the prosecuting witness, and that, there being no excuse for the act which he admitted, there was nothing for them to do but find him guilty under the second count.

2. There is a statute of this state (1 Mills' Ann. Stats., Sec. 2270; Gen. Stats. 1883, Sec. 1724) authorizing a person desirous of constructing a reservoir for the purpose of storing water, to take from any of the natural streams of the state and store away therein unappropriated water not needed for immediate use for domestic or irrigating purposes. The defendant asked the court to so charge the jury, which the court refused to do, that when needed for immediate use in irrigating lands by others having such right, one might not divert water from a natural stream for storage purposes. If the facts of this case called for an instruction on the law of defense of property, then this instruction should also have been given, for there was evidence that Calkins was storing water in a fish pond when defendant needed it for immediate use in watering his crops.

Besides this, a large part of the testimony was directed to the issue of the relative rights of the defendant and prosecuting witness to the use of the water at the time the difficulty occurred; that of the people tending to show that the prosecuting witness had the better right, that for the defendant, that his right was superior to that of the prosecuting witness. Much stress seems to have been laid upon the contention; and while it may not have been, and was not, decisive of the case, and while true that the only legitimate defense which the defendant had was defense of his person, and not of his property,—still, as the court in the instruction which we have already considered substantially said to the jury, that one of the defenses was that the defendent fired the shot to protect his property, in order to be consistent the instruc-

tion now considered should have been given, as bearing upon defendant's intent. Then, too, it misled the jury in determining what, if any, provocation was given by Calkins, which in any view of the case, was an inportant and material element under the second count.

The attorney general in his brief does not seek to justify the rulings attacked. His position is that the defendant, by not complying with the rules of practice applicable in such cases is not in a position to urge them. We are satisfied, however, by an examination of the record in this case, that this contention of the attorney general cannot be entertained.

3.  Counsel for defendant complained of another instruction which purported to state, in the language ordinarily used, the inference that might be drawn from the use of a deadly weapon when death results. One objection is that the court told the jury, as a matter of law, what the inference was, whereas the inference should be left to the jury. If such is the meaning of the language employed, there was error. But we do not think the instruction subject to that criticism. Neither do we perceive the force of the further objection that it was not applicable, because in this case death did not result. Under the first count of the information which charged assault with intent to commit murder, the charge was pertinent; for the court, as was right, had in another instruction charged the jury that a conviction of the specific offense charged thereunder could not be had unless the jury should believe from all the evidence that if the result of the shot had been the death of the the prosecuting witness, the act would have been murder; and as it was essential to a conviction for murder that malice be shown, it was proper to say that the jury might properly infer malice from the use of a deadly weapon had death resulted.

4.  In his cross-examination of defendant, the assistant district attorney, after asking him if he had not been in the

habit for years of carrying a revolver, and if he was not a good shot, put this question :  "You have shot at men?" and over the objection of defendant's counsel, he was required to answer, which answer was that he had. The question was repeated, and again objected to as improper and prejudicial to defendant's rights, whereupon the district attorney's assistant said :  "This testimony is offered as to the defendant's habits, to find out whether he is in the habit of carrying a gun to shoot people, *which he has done in that neighborhood promiscuously for several years.*"

This remark was highly improper and ought not to have been made ; and while defendant's counsel vigorously protested, the court merely replied that he thought this testimony should not be permitted in a case of this character, and sustained the objection. He should have accompanied this with a strong rebuke to counsel, and have cautioned the jury against being influenced by such improper statements and such method of interrogation. Those familiar with jury trials know that such statements made by counsel representing the people are hurtful to a defendant. The trial judge should not content himself merely with rejecting the offer of such testimony. He is something more than a mere presiding officer. It is his duty to maintain the dignity of the court and to protect witnesses and litigants from abuse of counsel, and when, as in this instance, a defendant's legal rights are so flagrantly outraged, the judge should promptly interfere, and by appropriate caution seek to remove from the minds of the jury the unfavorable impression which such conduct must produce.

When satisfied, as we are here, that defendant's trial was not fair, we are disinclined to look with favor upon the suggestion that a strict enforcement of our rules of practice might preclude the granting of the relief to which sound principles of law entitle him.

For the errors pointed out the judgment should be reversed and the cause remanded, and it is so ordered.

*Reversed.*