[No. 6177.  Decided July 27, 1906.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES DALTON,
*Appellant.*[1]

APPEAL AND ERROR—RECORD—AFFIDAVITS.  Affidavits used on a
motion for a new trial must be brought up by bill of exceptions or
statement of facts, or they will be struck out.

CRIMINAL LAW—TRIAL—EXCLUSION OF WITNESSES.  The exclusion
of witnesses from the court room rests within the discretion of the
trial court, and is not a matter of right, although it should be
granted in all proper cases.

SAME—ABUSE OF DISCRETION.  It is not an abuse of discretion to
refuse a request to exclude the witnesses from the court room in
a trial for murder, when no reasons are assigned, and the request
was directed principally against one witness, an officer whose pres-
ence may have been necessary to the prosecuting attorney.

CRIMINAL LAW—UNWILLING WITNESS.  Upon a trial for murder,
where an unwilling witness for the state refuses to answer questions,
upon the defendant's signal, it is not error for the trial court to
direct him to look at the jury and stop looking at the defendant,
and to attempt to make him testify, and to punish the witness for
contempt in the presence of the jury, where nothing was said preju-
dicial to the defendant in passing sentence.

WITNESSES—HOSTILE WITNESS—LEADING QUESTIONS.  It is discre-
tionary to allow leading questions to a hostile witness controlled by
the other side.

SAME—CREDIBILITY—INDUCEMENTS.  Where a witness hostile to
the state refused to testify, it is not error to refuse to allow the de-
fendant to show that inducements to testify had been made to the
witness, since that affects only his credibility.

CRIMINAL LAW—EVIDENCE—CONFESSIONS INCLUDING OTHER CRIMES.
Upon a trial for the murder of a police officer, evidence of confes-
sions by the defendant are not inadmissible because of the fact
that they included statements of other crimes, where the confes-
sion stated to the witness where he could find a kit of burglar's tools
used by the accused at the time of the murder, and which would
certainly convict him if found, and contained references to other
crimes, the mention of which were mere incidents.

[1]Reported in 86 Pac. 590.

Appeal from a judgment of the superior court for Spokane county, Poindexter, J., entered November 27, 1905, upon a trial and conviction of the crime of murder. Affirmed.

*John E. Blair* and *Edgar G. Riste,* for appellant.

*R. M. Barnhart, Fred C. Pugh,* and *A. J. Laughon,* for respondent.

MOUNT, C. J.—The appellant was convicted of the crime of murder in the first degree. He appeals from a judgment imposing the death sentence. The errors alleged are of the court, in refusing the sequestration of witnesses; in the reception and rejection of certain evidence during the trial; and in denying a motion for a new trial. Certain affidavits used on the motion for a new trial are attached to the transcript certified by the clerk. These affidavits were not made a part of the statement of facts, and are not certified by the trial judge. Respondent moves to strike these affidavits. This motion must be sustained under repeated rulings of this court. *State v. Wood,* 33 Wash. 290, 74 Pac. 380, and cases cited. *State v. Yandell,* 34 Wash. 409, 75 Pac. 988.

Twenty-six errors are alleged in the brief of appellant. It will not be necessary to discuss all of these assignments separately. We shall refer to such as are relied upon by the appellant and presented by the record, after striking affidavits above mentioned. After the jury had been impaneled, and after the prosecuting attorney had made his opening statement to the court and jury, appellant's counsel requested that the witnesses for the state be excluded from the court room. The prosecuting attorney stated that he did not see why the rule should be invoked, and requested that Mr. Thompson be excused from the rule. The request of appellant was thereupon denied. Counsel for appellant then said:

"I think that the conduct of the case so far warrants that these witnesses do not hear each other's testimony. It does

not apply to all of them, but it does apply particularly to officer Thompson. Notwithstanding the fact that your Honor instructs that they shall not give any information or consult with each other concerning the evidence given, I think it is an extraordinary reason, not only to the charge, but the conduct of the parties in this case, particularly officer Thompson, that they be excluded—he more than the rest."

The court again denied the application. Appellant now insists that his right to have the witnesses excluded was an absolute right, and that, if the right was discretionary, the court abused its discretion. The weight of authority seems to be that the exclusion of witnesses from a court room during the trial is a matter within the discretion of the trial court. 1 Bishop, New Crim. Proc., §§ 1188-90; 1 Greenleaf, Evidence (16th ed.), § 432; 2 Elliott, Evidence, § 798; Abbott's Trial Brief, Crim. Cases, p. 303; 3 Wigmore, Evidence, § 1839; 12 Cyc. 546, and cases cited. Elliott's late work on Evidence states the rule as follows:

"The order is a matter of discretion for the court, and by the weight of judicial decision a party is not entitled to it as a matter of strict right, yet it is rarely withheld. It tends to promote justice, and should be granted in all proper cases, and the exclusion of witnesses in the exercise of the court's discretion will only be reviewed on showing that it has been abused. In some states it may be claimed as a right. Usually all witnesses on both sides are excluded when such an order is asked by one of the parties, but it is held that the court may make exceptions as to certain witnesses when making an order." 2 Elliott, Evidence, § 798.

This court has followed the rule as above stated. *State v. Mann,* 39 Wash. 144, 81 Pac. 561; *Griffith v. Ridpath,* 38 Wash. 540, 80 Pac. 820; *State v. Armstrong,* 37 Wash. 51, 79 Pac. 490.

Nor do we think the court abused its discretion in this case. We find no good reason offered to the trial court for the sequestration. When counsel for appellant stated his reason to the court for asking the order, he said: "I think that the conduct of the case so far warrants that these witnesses

do not hear each other's testimony. It does not apply to all of them, but it does apply particularly to officer Thompson." The record before us is absolutely silent as to any conduct of the case so far except as to the fact that the jury had been selected, and the opening statement made. None of the details are shown; nothing of the character of the witnesses, or of their testimony, and nothing from which we can say that the court abused its discretion, except the mere fact of refusal to exclude the witnesses. Furthermore, the request seems to be directed particularly at officer Thompson, whose presence had been requested by the prosecutor. So far as we know this witness may have been the one upon whom the prosecutor was relying for information as to what the other witnesses would testify. He may have been the real prosecuting witness, whose presence was necessary to the prosecuting attorney, in which event the court was clearly justified in refusing to exclude him; and since the reason did not apply to other witnesses, the court, of course, was not required to exclude them.

A witness by the name of John Krum was called on the part of the state. This witness was a boy, sixteen years of age. After stating that he was acquainted with the defendant and had been with defendant in the vicinity of Newport in Stevens county for several days prior to the murder; that he came from Newport to Spokane with defendant, and was in a room adjoining defendant's room at the time defendant was arrested; and after stating that he had several conversations with defendant after the arrest; he was asked to relate certain of these conversations. The witness persistently refused to do so. The court then permitted the prosecuting attorney to ask him leading questions, and admonished the witness that it was his duty to answer them, and that if he did not answer, punishment would be inflicted upon him. The judge then sought to have the witness answer, but he still refused. In the course of the examination, which evidently consumed much time, the judge said to the witness:

"Cast your eyes to the jury and stop looking at the defendant. . . . I notice, young man, that you seem to persist in looking into the face of the defendant. You are not here to testify to the defendant. . . . Look at the jury and answer the question. . . . Tell what you know in answer to these questions. . . . Are you afraid to testify? . . . What is your object in refusing to answer these questions, John?"

After these and other questions of the same purport had been asked by the trial judge, and the witness had refused to answer, appellant's counsel requested the court to excuse the jury pending a preliminary examination of the witness. The court refused the request, and immediately the prosecuting attorney made the same request, and stated: "There is a matter I want to show to the court, . . . and I do not want to show it before the jury, and if it is proper to go before the jury after they return, I am willing to offer it then." Thereupon the court excused the jury, and evidence was introduced to the judge to the effect that, while the witness Krum was on the stand, the defendant would shake his head at the witness, and thereupon the witness would refuse to testify. This fact does not seem to be denied by the record. The court, thereupon, in the absence of the jury, endeavored, by persuasion and threats of punishment, to get the witness to testify, but without success. The court thereupon adjourned until the next morning. The witness was again called to the stand and again persistently refused to testify to certain questions in the presence of the jury, whereupon the court found him guilty of contempt and sentenced him to six months imprisonment in the county jail.

Some fifteen errors are assigned, all based upon what occurred during the examination of this witness: All of the remarks of the trial judge above quoted are assigned as separate errors; and it is also assigned that the court permitted leading questions, and refused to permit counsel for defendant to ask questions as to whether certain officers had offered

inducements to witnesses to testify; that the court erred in sentencing the witness to jail in the presence of the jury; and in excluding the jury at the request of the state, and denying the request of the defendant. There is no merit in any of these assignments. The witness was contemptuous and contumacious—clearly so. The request of the court for the witness to look at the jury and not at the defendant, under the facts disclosed by the record before us, was not improper. It was subsequently shown, without dispute, that the witness was being controlled by the conduct of the defendant himself. If this fact was prejudicial to the defendant, he brought it upon himself voluntarily, and cannot now complain. The directions of the court to the witness to look at the jury and stop looking at the defendant, and the question "Are you afraid to testify?" etc., did not, therefore, give the jury any fact which they were not authorized to consider. The witness was a hostile witness, actually controlled by the defendant, and whether the court should permit leading questions was within his discretion, and was not abused. That the witness would not testify was proof of itself that officers had not been successful in their efforts to induce him to do so, and since such inducements go to the credibility of the evidence, it was immaterial whether they had offered any inducements, and therefore not error to exclude questions calculated to show such inducements. The conduct of the witness in refusing to obey the order of the court to answer questions subjected him to summary punishment. There was nothing in what the court said to the witness in passing sentence upon him in the presence of the jury which was prejudicial to defendant. The fact that the witness was being punished for refusing to answer questions very probably had some influence upon the minds of the jury, but this refusal was brought about by the defendant himself, and he was therefore responsible for it. The punishment followed as a necessary result.

Several assignments are made to the effect that the court erred in receiving evidence of other crimes committed by the

defendant. The record brought here shows that, after the defendant was arrested and charged with the crime of murder, he made certain confessions to the witness Coughlin, in which confessions the defendant stated, in substance, that he had concealed certain burglar's tools and materials, and directed the witness where to find them. He also stated that he had been twice in the penitentiary, had held up a store at Newport, and that if the burglar's tools were found, the officers would know that they were the kit of tools which burglarized Shinn's safe, and nothing would save his neck. The record shows that the person murdered was a police officer; that he was killed at the time a safe belonging to Mr. Shinn was being burglarized; that the door of the safe was blown off, and the burglars were found before they had accomplished their purpose. The police officer was shot and the burglars fled. The confessions above made were admissible, under the rule stated in *State v. Poole*, 42 Wash. 192, 84 Pac. 727, where, in speaking of the commission of other crimes which had been stated in the confession, we said:

"It was not intended to show that appellant had been convicted of the crime of vagrancy or grand larceny, with which he had been charged, and the mention of those trials was a mere incident, the confessions which he made having been made in the presence of the officers at the time of the prosecution of these aforementioned trials, viz., for vagrancy and larceny. They were admitted as testimony in the nature of confessions, not a confession of the crimes of which he stood chargeable at the time the confessions were made, but of the crime of which he now stands charged. And we think, under all authority, that such testimony is admissible; that it tended to prove the direct charge contained in the information; and that being true, it was competent evidence for that purpose, no matter where and under what circumstances the confessions were made, the only limitation being that they must be voluntarily made."

We find no error in the record, and the judgment is therefore affirmed.

ROOT, HADLEY, DUNBAR, CROW, and RUDKIN, JJ., concur.