[No. 8305.]

## HILLEN V. THE PEOPLE.

1. JUROR—*Opinion as to Capital Punishment—Challenge for Cause.* In the trial of an information or indictment for homicide committed in the perpetration of highway robbery a juror who declares that he will not, under any circumstances, agree to a verdict of guilty, and fixing the penalty of death, is properly challenged for cause. *Demato v. People*, 49 Colo. 147, followed. (281.)

2. CRIMINAL LAW.—*Evidence of Other Crimes.* The prisoner was charged with homicide in the attempt to commit highway robbery. No robbery was in fact committed, but it appeared that the deceased was ordered by prisoner to hold up his hands, the fatal shot was fired immediately thereafter, and the prisoner at once made his escape. *Held* that to show the intent of prisoner to commit a robbery, evidence of several robberies committed by him, shortly before and shortly after the homicide, was properly received. (282, 283.)

The authorities as to the admissibility of testimony of this character cited. (283.)

Where the prosecution have the prisoner's confession, good practice seems to require that it should be offered in the first instance, and that if received, no evidence of other crimes should be put in unless clearly necessary.

A failure to follow this course is not error. (283, 284.)

3. —— *Misconduct of District Attorney.* Prejudicial and improper remarks of the district attorney in his closing address to the jury will not reverse a conviction unless the misconduct of the officer was so gross as to have probably influenced the jury.

In the trial of an information for murder the district attorney, insisting upon the death sentence, said to the jury that a sentence for life "means that after awhile he gets out * * * he is given time for good behavior and in a few years is out again." This remark being objected to by the prisoner's counsel was immediately withdrawn, and the jury were directed by the court to disregard it. The testimony establishing the guilt of the

accused being so clear and convincing that no other verdict was possible, *held* that the prisoner had not been prejudiced by the prosecutor's conduct of which he complained. (286, 287.)

The duty of the district attorney to conduct himself, not as a partisan, eager to convict, but as a *quasi* judicial officer, whose sole duty is to aid the court and jury in arriving at a just result in every case, again set forth and enlarged upon; and regret expressed that similar previous admonitions continue to be disregarded. (287.)

*Error to Denver District Court.* Hon. CHARLES C. BUTLER, Judge.

Mr. THOMAS WARD, JR., Mr. EDWARD CAYPLESS, Mr. HOWARD L. HONAN, and Mr. CHARLES H. TALBOT, for plaintiff in error.

Hon. FRED FARRAR, Attorney General, Mr. WENDELL STEPHENS, Assistant Attorney General, for The People.

*Decision en banc.*

TELLER, J., delivered the opinion of the court.

The plaintiff in error was convicted of murder in the first degree, for the killing of one Chase, said killing having been committed in the perpetration of highway robbery.

Three principal errors are assigned:

(1) The sustaining by the trial court of challenges of jurors who said they would not under any circumstances return a verdict of guilty, and fix the punishment at death;

(2) The admission of testimony showing the commission of other crimes;

(3) The misconduct of the District Attorney in his closing address to the jury.

Counsel for plaintiff in error concede that the first assignment of these alleged errors is bad, unless the case of *Demato v. The People*, 49 Colo. 147, 111 Pac. 703, 35 L. R. A. (N. S.) 621, Ann. Cas. 1912 A. 783, be overruled, and urge that the ruling in that case was wrong in principle.

We cannot agree with counsel on that matter, and find no reason to depart from the rule laid down in that case.

The second error is alleged to consist in the fact that the court admitted evidence of several highway robberies committed or attempted to be committed by the defendant, before and after the killing of Chase.

The homicide for which defendant was tried was committed on October 24, 1914, that is, on the night of October 23, shortly after midnight.

The testimony to which objection is made was as to robberies committed, or attempted, on the nights of October 21st, 22nd, 23rd, early in the morning of the 24th, and the evening of the 25th. They were all committed within a few blocks of the place where the homicide occurred.

It is objected that these were independent acts which had no connection with the offense for which the defendant was tried. It appears from the record, however, that the testimony was received for the purpose of showing that the homicide occurred while defendant was committing an act of robbery, thus fixing the crime as murder in the first degree. The testimony showed that the defendant commanded Chase to throw up his hands, and an instant later fired the fatal shot.

No attempt at actual robbery was made, the defendant running away as soon as the shot was fired; and aside from the order to Chase to throw up his hands, there was nothing to characterize defendant's action as an attempt to rob. It was necessary, therefore, to establish his intent to commit robbery, and for that purpose evidence of other offenses is admissible, if showing or tending to show intent.

Here the fact of the killing by the defendant was established by an eye-witness; but "the evidence is receivable irrespective of whether the act charged is itself conceded or not. Where (as usually) it is not conceded, the evidence of intent goes to the jury to be used by them only on the assumption that they find the act to have been done by the accused: it is then to be employed by them in determining the intent. This use of such evidence is universally recog-

nized. As to the similarity of the other acts, no fixed rule can be formulated. They certainly need not have been done to the same person: they need not have accompanied more or less immediately the act charged, and they may have been done even at a subsequent time. The precedents show every variety of circumstances, and a correct application of the principle would receive any evidence of the sort which conveys any real probative indication of the defendant's intent." Wigmore on Evidence, sec. 363.

This court has in several cases approved the substance of the rule above laid down, the testimony being by the trial judge limited to the purpose for which it was admitted. —*Jaynes v. People,* 44 Colo. 535, 99 Pac. 325, 16 Ann Cas. 787; *Warford v. People,* 43 Colo. 107, 96 Pac. 556; and *Clarke v. People,* 53 Colo. 214, 125 Pac. 113.

In this case, by instruction number 13, the trial court limited the evidence of other offenses to the question of intent; and there is no claim that the instruction was not full and complete. The district attorney in his argument also told the jury the purpose of that testimony.

The attempted robberies of which testimony was admitted, were all of the same character as the robberies, being what are commonly called "hold ups," differing only in the fact that the robbery was not consummated by an actual taking of property from the persons held up. Testimony as to these attempted robberies was admissible as showing a system under which the accused operated, bearing thus upon the intent in the assault upon Chase.

It is, however, objected that, inasmuch as the state had defendant's confession, and subsequently introduced it in evidence, there was no necessity for testimony as to these other offenses. Good practice, it would seem, in view of the danger that this kind of evidence may be misapplied to the injury of the accused, might require the state to offer the confession first, and if received, to put in no further evidence of other crimes, unless clearly necessary. Yet, a failure to

follow that course is not, according to the authorities, error. In an Indiana case where it was necessary for the State to establish the criminal intent in a conversation alleged to have been an offer to bribe, it was urged that the language used was not equivocal, and that the jury had a right to infer therefrom the intent charged; but the court said: "While this may be true, it does not render other proof of such intent or motive incompetent. When a fact is to be proven the law requires the best evidence attainable, but it does not put any limit upon the amount of proof that may be adduced. * * * Even if appellant had admitted the criminal intent charged, if the conversation occurred, or that he was guilty as charged, if he had such conversation, the admission of the evidence complained of would not have been in error. We do not think the admission of any competent evidence can be rendered erroneous by statements or admissions of the accused made to the court and jury during the trial." *Higgins v. State,* 157 Ind. 57, 60 N. E. 685.

There was, then, no error in admitting the evidence under consideration.

The third ground, the alleged misconduct of the district attorney in his address to the jury, presents a question which has been several times before this court. *Smith v. People,* 8 Colo. 457, 8 Pac. 920; *Heller v. People,* 22 Colo. 11, 43 Pac. 124; *Newby v. People,* 28 Colo. 16, 62 Pac. 1035; *Herren v. People,* 28 Colo. 23, 62 Pac. 833; *Gilstrap v. People,* 30 Colo. 265, 70 Pac. 325; *Wechter v. People,* 53 Colo. 89, 124 Pac. 183; and *Henwood v. People,* 57 Colo. 544, 143 Pac. 373.

These cases hold that judgment should not be reversed unless the court is of the opinion that the misconduct of the prosecuting officer was so gross as to be likely to have influenced the jury: and that if, on a review of the evidence, it appears that a different verdict could not reasonably have been rendered, such misconduct will not be grounds for reversal. It must be determined from the whole record whether or not the trial was fair. The same rule is applied

in other states: *State v. Moody*, 7 Wash. 395; *Duffin v. People*, 107 Ill. 113.

In the case of *Wechter v. People, supra,* it was sought to reverse a judgment imposing the death penalty where the accused was found guilty of a killing while perpetrating a robbery, as in this case. It was alleged as error that the District Attorney urged upon the consideration of the jury that "men sent to the penitentiary seldom serve their sentences." On objection being made by defendant's counsel the court remarked that, there being no evidence in the case how long anybody stays in the penitentiary, comment on it as experience was improper. The District Attorney, however, insisted that the jurors might apply their knowledge and experience to the question, where they fix the punishment.

This court said, with reference to it, that the court should have rebuked the District Attorney and prevented his proceeding along that line; and further said, "we think, however, that this argument could not in any way have influenced the jury in returning the verdict they did. They would not have sentenced the defendant to hang instead of to the penitentiary, unless they believed from the testimony the crime of murder was committed under such circumstances that the death penalty should be imposed. Men sworn to perform their duty and render a verdict according to the testimony and the law as given them by the court, will not be influenced by such argument or statements on the part of the prosecuting attorney to which we have referred, to render a verdict other than that which the testimony and the law justify."

In this case the District Attorney told the jury that a life sentence, "means that it is only for his life expectancy under the mortality tables, and means after a while he gets out. It means that he is given time for good behavior, and in a few years he is out again."

Objection being made to this statement, the court di-

rected the jury, to disregard the part with reference to life expectancy. Then the District Attorney said, "I do not want any error in this case, and I will refrain from the argument and ask the jury to disregard anything said along that line."

The court then said to the jury, "You will disregard any statement with reference to the prisoner getting out at the end of his life expectancy. It is not for you to consider, and it will be disregarded entirely by you; pay no attention to it whatever in fixing the punishment, if you find the defendant guilty, or take it into consideration in any way in your deliberation."

. At the close of the argument the court, before giving the formal instructions, stated to the jury that, though it had at one time been the law that life imprisonment was only for the life expectancy, it was no longer the law, and that they should disregard the District Attorney's statement with reference to it.

There were other remarks of the District Attorney to which objection was made, and others to which objection might well have been made; but was not. In every case where a valid objection was made the court directed the jury to disregard the improper remarks, and no attempt was thereafter made by the prosecutor to continue them.

While it is unfortunate that these remarks were made, thus raising the question of the fairness of the trial in a capital case, if we apply to them the rule laid down in *Wechter v. People, supra,* as above quoted, it can not be said that they constitute reversible error. Of this case it is true, as was then said of that: "The testimony on the part of the prosecution so clearly and convincingly establishes the crime for which the defendant was convicted, that it appears certain none of the matters of which the defendant complains injuriously affected his rights."

It is greatly to be regretted that prosecuting officers so often forget that in the trial of a criminal case they repre-

sent the State, which demands not that the accused be convicted, but that justice be done. A prosecutor should act not as a partisan eager to convict, but as an officer of the court, whose duty it is to aid in arriving at the truth in every case. Occupying this quasi-judicial position he may not properly endeavor to exclude competent evidence, nor introduce that which it is of doubtful competency. He owes a duty to the accused as well as to the State; and abuse of a defendant, baseless insinuations against his witnesses, and acts of disrespect toward opposing counsel, comport neither with that duty, nor with the dignity of the office of public prosecutor. These facts have been many times pointed out, by this and other courts; yet district attorneys continue to disregard them, and to risk a reversal in cases involving great expense to the State; all apparently, because of a misapplied zeal, a mistaken desire to win.

Where it appears that improper conduct on the part of the prosecutor may have been prejudicial to the rights of the accused, there should be no hesitancy in reversing the judgment; but in this case it appears that no other verdict could properly have been returned; hence there can be no inference of prejudice from the remarks to which objection is made.

The judgment of the District Court is affirmed.

It is further ordered that said judgment be executed during the week beginning June 20, 1915.

WHITE, J., dissents.

Decided March 1, A. D. 1915. Rehearing denied June 7, A. D. 1915.