## Commonwealth v. Poe

158

*Clarence M. Lawyer, Jr.,* district attorney, and *George Atkins,* assistant district attorney, for Commonwealth.

*Luria & Still,* for defendant.

ANDERSON, J., October 29, 1951.—In this proceeding defendant, Herbert Wilson Poe, was convicted by a jury of assault and battery with intent to ravish; incestuous adultery and rape, and incestuous carnally knowing and abusing a woman child under 16 years of age, (statutory rape). The various charges were made in three separate indictments and the offenses were alleged to have been committed individually on three of defendant's own children. After trial formal motions for a new trial and in arrest of judgment were filed by counsel in each case in the usual form. The cases were argued before the court en banc and counsel filed the following additional reasons for a new trial:

"1. The court erred in permitting Rosemary Margaret Poe, wife of the defendant, Herbert W. Poe, to testify against her husband over the objections of the defendant. The court permitted the witness to testify as to the age of her child, the age of the child being an essential part of the Commonwealth's required proof to sustain the indictment against the defendant.

"2. The defendant was not granted a fair and impartial trial in that the court in the presence of the hearing of the jury, found the witnesses, Jeanette Poe and Catherine Ann Poe Hoover, guilty of contempt of court and in doing so the court by its remarks and the effect of said remarks upon the witnesses caused a state of hysteria in the court room and the action of

the court interfered with a fair and impartial trial of defendant's case before the jury."

In counsel's brief and at the argument these were the only points stressed and the formal motions filed originally were not pursued.

The objections that the wife should not have been permitted to testify as to the age of her children is obviously without merit since the Act of May 23, 1887, P. L. 158, as amended, specifically provides in limiting the right of a husband or wife to testify against each other that ". . . in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband or wife . . . each shall be a competent witness against the other."

In Commonwealth v. Nadolny, 163 Pa. Superior Ct. 517, the words injury or violence were held to include moral pollution of the body as well as physical abuse.

"Certainly the legislature could not have meant that the mother of the child was a competent witness against her husband if charged with abusing the child by striking her, but was incompetent as a witness if the husband abused the child by destroying her chastity."

The other question raised is to the effect that the court erred in sentencing two witnesses for contempt and in its remarks made in the presence of the jury in connection therewith.

This case as it developed disclosed a very revolting situation involving a continuous course of sexual immoralities practiced by a father upon his own children from early age up to womanhood. The first daughter called to the stand refused to testify and after having the situation explained to her calmly and without passion, upon her continued refusal to testify, the court found her in contempt and imposed sentence. Practically the same thing happened when the older sister,

married at the time, was called. No exception was taken with reference to Jeanette but an exception was taken as to the court's remarks to Catherine in the presence of the jury. Following these two witnesses, a third daughter, Arlene Poe, was called to the stand, who without hesitation testified to several instances of sexual abuse inflicted upon her by her father. Thereafter the two sisters who had refused to testify and had been sentenced were returned to court and testified apparently very willingly. Counsel cites the above happening as error but can cite no authority for this proposition. The Act of June 16, 1836, P. L. 784, empowers the court to inflict summary punishment for contempts and no question has been raised that the witnesses did not commit contempt by refusing to testify.

While our own research has developed no Pennsylvania cases precisely in point there is abundant authority and precedent for the precise procedure followed in this case. Problems of Contempt of Court, by Thomas, a recognized authority on this subject, is authority for this comprehensive statement:

"Criminal contempts embrace all contemptuous acts in which the primary purpose of the prosecution is to punish in order to vindicate the authority of the court. In such cases the prosecution is undertaken in order to deter others from the commission of like acts, and to punish the contemnor for his contemptuous act, although occasionally the purpose will actually be coercive, in order to elicit information from a recalcitrant witness."

The following pronouncements of other courts are indicative of the proper procedure: Where, in a criminal prosecution, a witness refused to answer certain questions and continually looked at defendant, who prevented the witness from answering by shaking his

head at him, it was not error for the court to request the witness to look at the jury instead of defendant; to ask him why he did not testify, and if he was afraid to testify; and on the persistent refusal of the witness to answer to sentence him for contempt in the presence of the jury: State v. Dalton, 43 Wash. 278, 86 Pac. 590. It is improper for the court during the progress of the trial to make any unnecessary comments, or to take any unnecessary action, which might tend to prejudice the rights of either of the parties litigant but, when it becomes unavoidable, the court has the right, even in the presence of the jury, to impose a fine upon any person connected with the trial, and such action cannot of itself cause a mistrial, merely because it might have some influence on the minds of the jurors: State v. Parks et al., 25 N. M. 395, 183 Pac. 433. Trial court may punish counsel for contempt of court if necessary, even in presence of jury: State v. Montgomery et al., 223 S. W. (2d) 463.

Counsel's allusion to a state of hysteria existing in the courtroom because of the remarks of the court is entirely without merit. Naturally the continued refusal of the witnesses to testify created a temporarily tense atmosphere, but everything that was said or done was in a calm, orderly and unimpassioned manner and the usual proprieties of the courtroom were well observed by counsel and all others connected with the trial. In its charge the court endeavored to clarify or explain the situation involving the contempt proceedings to the jury in such a way that certainly no prejudicial inference could have been deducted therefrom.

Pursuant to the above conclusions we will overrule and dismiss defendant's motions in the following order:

And now, to wit, October 29, 1951, defendant's motions in arrest of judgment and for a new trial, filed

April 20, 1951, and October 15, 1951, are overruled and dismissed and defendant, Herbert Wilson Poe, is directed to appear before the court for sentence November 5, 1951.