No. 14,662.

Paine *v*. The People.
(103 P. [2d] 686)

Decided June 3, 1940.

Mr. WILKIE HAM, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. McAULIFFE, Assistant, for the people.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

PLAINTIFF in error Paine, to whom we will refer as defendant, Frank Burchett, and Aubrey Paine, were jointly charged with the larceny of a calf, the property of Jim Allen. Defendant was granted a separate trial, which resulted in a verdict of guilty. Thereafter motion for new trial was overruled and defendant was sentenced to a term of not less than eighteen months and not more than three years in the penitentiary. To reverse this judgment the defendant prosecutes this proceeding in error.

To establish its case the people proved the loss of several head of cattle, including the calf described in the information, by the prosecuting witness; fixed the presence of the defendant in the vicinity of the place where an animal had been butchered; introduced in evidence a hide with the brand partly cut out, found nearby, which the prosecuting witness identified as being from the calf allegedly stolen; and produced a number of witnesses who testified to admissions of guilt made by defendant. Defendant, who took the stand in his own behalf, admitted that he was present when the calf was shot by his codefendant Burchett, but testified that the latter at the time asserted ownership of the animal and that such portion of the meat as defendant received after assisting in the butchering was in part payment of a pre-existing debt owed him by Burchett. Wilkie Ham,

the attorney who solely conducted the case for the defendant, appeared as the first witness in the latter's behalf. His testimony was intended to impeach the evidence given by the prosecuting witness concerning his identification of the hide. Mr. Ham, who testified on no other subject, stated that in a conversation at which Ham, Burchett and the prosecuting witness were present, the latter had admitted that when the hide was first discovered he was unable to identify it as being from one of his animals. Upon cross-examination of Mr. Ham the following transpired:

"Q. The Mr. Burchett you refer to is in the county jail within a few feet of this court room, isn't he? A. I couldn't say as to that.

"Q. And it wouldn't be a very difficult matter to get him in here, would it? A. I couldn't say as to that.

"Q. You say Mr. Burchett was with you when Jim Allen said he could not identify the hide? A. He was. At that time, Mr. Allen had a pickup, I believe it was; he said he had been fixing his windmill; he was coming to the First National Bank from the Las Animas Hardware. Mr. Burchett and I were standing there, and I asked Mr. Burchett to introduce me to Mr. Allen because I had never met Mr. Allen.

"Q. This man Burchett, is the same man that has been referred to heretofore before the jury, and is the man who in the middle of his trial here, stopped and pleaded guilty? A. That is the same man.

"Q. And he is one of the defendants in this same information? A. Yes.

"Q. He plead guilty to the charge of larceny, and the same charge as we are now trying this defendant, Paine, on? A. I wouldn't say the same charge.

"Q. Well, it is exactly the same case, isn't it? A. He plead guilty to stealing an animal, yes.

"Q. Now, Mr. Burchett and the present defendant have worked in the closest harmony in this matter all along, haven't they? A. I can't say as to that.

"Q. Well, you saw them consorting together here in the court room during Mr. Burchett's trial, did you not? A. I don't know. No; I don't know as I did.

"Q. And you and the attorney representing Mr. Burchett were often in conference during the trial of Burchett, and you suggested questions to be asked in the Burchett trial, did you not? A. No; I didn't.

"Q. Well, I saw you conferring very often? A. Sure. I tell you, Mr. Mabry. When I came back here to Colorado, I was in Senator Johnson's office, and Senator Johnson's client was Mr. Burchett, and he was in the state legislature, and he asked me to represent Mr. Burchett, to try to get a bond, and Mr. Burchett asked me to represent him in that matter, and I did discuss the case lots of times with Mr. Burchett, and I discussed the case with Mr. Paine. Mr. Paine is my client in this matter, and not Mr. Burchett.

"Q. And you and Mr. Johnson, who represented the defendant Burchett yesterday, are partners in the practice of law? A. Well, we are associated; that is all.

"Q. You operate, or maintain an office in Lamar, and Mr. Johnson in Las Animas? A. That is right.

"Q. You spend one day a week in Las Animas in that law office, and Mr. Johnson spends one day during the week in Lamar? A. No; there is no such arrangement.

"Mr. Mabry: That is all.

"Mr. Ham: I move that all of that about the attorneys, Johnson and myself, be stricken, as incompetent, irrelevant and immaterial.

"The Court: Well, there is part of it, at least, is immaterial.

"Mr. Ham: All right.

"(Witness excused)."

■■ The defendant asserts that the trial court committed prejudicial error in permitting the people thus to bring to the attention of the jury the disposition of the case against the codefendant Burchett. We are satisfied that this contention is sound. "Where two persons

have been jointly indicted for the same offense, but are separately tried, a judgment of conviction against one of them is not competent on the trial of the other, inasmuch as his conviction is no evidence either of joint action or of the guilt of accused." 16 C.J. 670, §1341. In addition to the authorities there cited in support of this statement, see the recent cases of *LeRoy v. Government of Canal Zone* (5CCA), 81 F. (2d) 914; *Walding v. State*, 138 Tex. Crim. 430, 120 S.W. (2d) 1052; *Giles v. State*, 109 Tex. Crim. 234, 4 S.W. (2d) 66. Since the record of the conviction of the codefendant Burchett would not be admissible in evidence against the defendant here, it would seem certain that testimony relating to the fact was incompetent. As is said in *State v. Bowker*, 26 Ore. 309, 38 Pac. 124: "Under any other rule the guilt of a defendant jointly indicted with another, if he should happen to be tried subsequent to his codefendant, might depend upon the result of a trial over which he had no control, to which he was not a party, and in which he had no right to appear or make a defense." In the case of *Webster v. Commonwealth*, 223 Ky. 369, 3 S.W. (2d) 754, J. D. Webster, his brother Carl, and cousin Oval, were indicted for the murder of one Ed Mire. The defendant J. D. Webster was granted a separate trial in the course of which his codefendant Oval was called as a witness for the defense. On the cross-examination of Oval, the following occurred:

"Q. You are a codefendant, jointly indicted with J. D. Webster and Carl Webster, charged with the murder of Ed Mire, you are one of the defendants named in the indictment? A. Yes sir.

"Q. You were tried on that indictment at the last February term of this Court weren't you? A. Yes sir.

"Q. And found guilty? A. Yes sir."

In ordering a reversal the Court of Appeals of Kentucky held that it was clearly improper to show on the trial of J. D. Webster that a codefendant had been convicted under the same indictment, saying: "If Oval was

guilty, it might well be concluded that appellant was not innocent." The opinion in this latter case is an example of the broad application of the rule, since there evidence of the concerted action of the three defendants was admitted and—which is not the case here—the jury was instructed that a conviction could be had upon a criminal conspiracy theory.

In the case at bar, although defendants were charged jointly in the information, the crime alleged was in its nature several, and one of them could have been acquitted and the others convicted. Nor was the case tried upon the theory that Burchett was the principal and defendant an accessory. These circumstances render impertinent many of the cases, including *State v. Bowers,* 108 Kan. 161, 194 Pac. 650, cited by counsel for the people.

█ If Burchett's voluntary plea of guilty, made in the course of the trial, is considered as amounting to a voluntary confession of his guilt, evidence thereof as such clearly was inadmissible against Paine under our holding in *Cook v. People,* 56 Colo. 477, 138 Pac. 756, wherein, at page 486, we said: "While statements, confessions and admissions of guilt made by one of several persons jointly indicted and tried for the same offense, are admissible against the person making them, they are not admissible against his codefendants unless made in their presence and assented to by them."

The strict limitation courts have applied to the reception of evidence of admissions of codefendants in separate trial is well exemplified in the case of *Askew v. People,* 23 Colo. 446, 48 Pac. 524. Upon the separate trial of one of four defendants charged with the larceny of cattle, a codefendant was called as a witness for the defense. Upon cross-examination he was asked, allegedly for impeachment purposes: "Q. Didn't you say [to a third party] you were liable to get into trouble on this account—that you were butchering, and didn't he ask you how you butchered when you had no cattle, and

didn't you say you bought two or three head once in a while, for a blind, and then 'rustled' the cattle?" The answer was: "No, sir, I did not." In rebuttal, the people called the third party mentioned who was permitted to testify that the codefendant witness had stated: "We are liable to get into trouble ourselves." This statement had reference to the defendant on trial, the codefendant witness having been imprisoned for the stealing of cattle. The case was reversed solely because of the admission of this rebuttal statement. The court said: "If the [codefendant] witness had, in fact, used the language attributed to him, the state could not introduce such statements as against the defendant, Askew," in the separate trial of the latter.

██ In connection with the transaction under consideration the attorney general calls attention to section 19 of the Colorado Canons of Ethics providing that: "When a lawyer is witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client," and suggests that a portion of the questioned cross-examination was designed to show the unessentiality of the appearance of defendant's counsel on the witness stand. Obviously this canon relates to the duties and responsibilities of a lawyer in the practice of his profession and transgression thereof by him may not be permitted to penalize his nonparticipating client nor justify the reception of evidence, patently inadmissible against the latter, on the basis that it might disclose the ethical dereliction of the former. The relation of attorney and client does not render an attorney incompetent to testify in behalf of his client. *Sholine v. Harris,* 22 Colo. App. 63, 123 Pac. 330; *French v. Hall,* 119 U.S. 152, 7 Sup. Ct. 170, 30 L. Ed. 375. The ethical propriety of so doing is another matter.

■ As the record we have quoted discloses, and the attorney general stresses, no proper objection to the questioned evidence was interposed. The same condition existed in *Reppin v. People,* 95 Colo. 192, 34 P. (2d) 71. In the opinion therein we said: "We are not required to consider objections not made below. Nevertheless, we may, and sometimes do, consider such objections when we feel that a seriously prejudicial error was made and that justice requires such consideration." We are of the conviction that the situation in the case at bar demands like consideration. See, also, *Lewis v. United States,* 92 F. (2d) 952; *Hoppal v. People,* 102 Colo. 525, 81 P. (2d) 381, and *McRae v. People,* 101 Colo. 155, 71 P. (2d) 1042. In the light of the unwarranted course adopted by the district attorney in this cross-examination, an objection from the witness stand might well have been as disastrous to the defendant's cause as were the answers of the lawyer witness.

■ The trial court did not err in the reception of testimony concerning the alleged participation of the defendant in the killing of certain animals other than the one described in the information. This evidence came within the exceptions mentioned in the case of *Bacino v. People,* 104 Colo. 229, 90 P. (2d) 5, and the numerous decisions of this court therein cited. The jury was properly instructed as to the scope of their consideration of this evidence.

The judgment is reversed.

MR. JUSTICE FRANCIS E. BOUCK and MR. JUSTICE YOUNG concur.