No. 21700.

ALLEN C. JAMES *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(420 P.2d 229)

Decided November 21, 1966.

C. J. BERARDINI, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES F. PAMP, Assistant, for defendant in error.

*In Department.*

PER CURIAM.

PLAINTIFF in error, Allen C. James, who will hereinafter be referred to as the defendant, was convicted on both counts of an information charging him with (1) larceny from the person and (2) conspiracy to commit larceny from the person.

The evidence of the People was to the effect that on the date alleged in the information one Martin E. Henry was employed as a service station attendant in a Denver filling station. Among his other duties was that of "money changer" in which capacity he wore a money belt containing about twenty-five dollars in currency and cash. On the day in question he was approached by a stranger, who was later identified as one Myart. This stranger got the attention of Henry by asking about the service station's premium plan, and then departed. Shortly afterward the stranger returned and informed Henry of the presence of a "sick man" in the men's rest room and asked for assistance. Both the stranger and Henry thereupon went to the rest room and opened the door. Henry testified that it was the defendant who was in the men's rest room and that the defendant and Myart both proceeded to attack him with their fists. According to Henry, he was severely manhandled by both men and a small amount of his money was taken by one of the two. Both Myart and the defendant then fled the premises.

Alarm was given to the police, and within minutes the alleged assailants, who separated in flight, were taken

into custody at different locations, and transported to the police station. There both the defendant and Myart were picked out of a police "line-up" by Henry and were positively identified by him as his assailants.

Upon trial the defendant elected not to testify and his defense consisted solely of the testimony of Myart. The gist of Myart's testimony was that it was he, and he alone, who assaulted Henry and that the person in the rest room was not even known to him. He elaborated somewhat by further testifying that the defendant did not in any way participate in the rest room fracas and that the defendant was not in anywise a participant in the planning or carrying out of any larceny from the person. The net effect of Myart's testimony was, of course, to attempt to absolve the defendant of any guilt, and to personally assume all blame for the offense. In the course of his testimony Myart, voluntarily and without any direct query designed to elicit such an answer, stated in connection with this offense that he had theretofore pled guilty to the charge of larceny from the person.

Defense counsel thereupon moved for mistrial on the ground that the witness "has stated in front of the jury that he had pleaded guilty to the same charge for which the defendant was now being tried" and had thus violated a principle established by us in *Leech v. People,* 112 Colo. 120, 146 P.2d 346; and *Paine v. People,* 106 Colo. 258, 103 P.2d 686. The Court denied the motion and this ruling constitutes the main ground upon which the defendant now predicates his claim of alleged error.

In *Leech,* the co-defendant Holman took the stand as a witness for the People and in his direct testimony testified that he had previously pleaded guilty to the same crime for which the defendant was then being tried. The same general situation also prevailed in the *Paine* case.

But there is a definite distinction between the *Leech* case and the one at hand. Very pointedly, it is

asserted in the *Leech* opinion that it must be "borne in mind that Holman's testimony was indispensable to support the verdict" of guilty; that the Holman testimony came from a witness for the People, on direct questioning by the District Attorney; that it was neither incidental nor accidental; and that it did not come from the witness as a voluntary statement. None of these essential, necessary elements are present here. The testimony of Myart, who had been called not by the People but by the defendant himself, was not indispensable to support the verdict of guilty. Also, at that juncture of the trial, there already being ample evidence in the State's case to justify a verdict of guilty, the witness' recitations were only incidental and accidental. Finally, the Myart testimony came from him as a witness called by the defendant himself, did come as a voluntary statement, was uncalled for and was not responsive to any question from either counsel for the People or the defendant.

Furthermore, Myart's testimony was, as already noted, to the effect that he alone assaulted Henry and stole some money from his person. The fact that he later pled guilty to the charge of committing larceny from Henry's person simply corroborated his earlier testimony given upon the trial. In this circumstance, then, this testimony was indeed quite proper.

■ The next contention of the defendant is somewhat related to this same aforementioned assignment which we held to be without merit. Defendant claims that error was committed by the District Attorney when during his closing argument to the jury, he stated that Myart had "pleaded himself out." While we are conversant with the legal implication of such phrase, we revert to the record itself for the deputy District Attorney's explanation of it when objection was interposed. "My comments" he stated, "were made on the basis of the statement as made by Mr. Myart from this witness stand that he himself told this jury and this Court that he had pleaded guilty in this case." This remark then,

was obviously referring to the testimony of Myart discussed in the previous paragraph above. In accordance with our ruling there, the remarks and use of such phrase in summation of evidence properly before the jury, even if somewhat meaningless to them, was not improper.

Complaint is also made that the evidence fails to show that any money was actually taken from the person of the victim. It is true that Henry was uncertain as to the exact amount of money stolen from him. However, the gist of his testimony was that *some* money was forcibly taken away from him. And any deficiency in this regard was cured when Myart took the stand in behalf of the defendant and testified that he "proceeded to grab money, money of an undetermined amount to my knowledge, and I ran out across a vacant lot."

We find the other assignments to be without merit, and we perceive no good purpose which would be served by commenting upon them.

The judgment of guilty as to both counts is affirmed.

MR. JUSTICE FRANTZ, MR. JUSTICE MCWILLIAMS and MR. JUSTICE SCHAUER concur.