The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 2, 2020

## 2020COA2

**No. 17CA1755, *People v. Rios* — Crimes — Menacing — Accessory to Crime; Criminal Law — Codefendants — Plea Agreements; Evidence — Admissibility**

A division of the court of appeals holds that the general rule barring the use of a codefendant's guilty plea as substantive evidence of the defendant's guilt does not apply where the defendant is charged only with acting as an accessory to the codefendant's offense.

COLORADO COURT OF APPEALS                                    **2020COA2**

Court of Appeals No. 17CA1755
Weld County District Court No. 16CR1728
Honorable Thomas J. Quammen, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Gilberto Rios,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Román and Graham*, JJ., concur

Announced January 2, 2020

Philip J. Weiser, Attorney General, Paul E. Koehler, First Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Patrick R. Henson, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    A jury found defendant, Gilberto Rios, guilty of accessory to menacing.  On direct appeal, Rios contends that the trial court erred by (1) permitting the guilty plea of a codefendant to be used as substantive evidence of Rios's guilt and (2) denying repeated requests for a mistrial based on the prosecutor's references to Rios's refusal to talk to a police officer at the scene.  Alternatively, Rios argues that the aggregate impact of these alleged errors warrants reversal under the cumulative error doctrine.

¶ 2    We hold that the general rule barring the use of a codefendant's guilty plea as substantive evidence of the defendant's guilt does not apply where the defendant is charged only with acting as an accessory to the codefendant's offense.  We also conclude that the prosecutor's references to Rios's pre-arrest silence were not improper.  We therefore affirm the conviction.

## I.    Background

¶ 3    During a large fight at a park, Marty Vigil pointed a black BB gun at the victim and threatened to shoot him.  A police officer responding to the scene saw a person, later identified as Rios, walk away from the fight and put a dark object into a trash can.  Another officer subsequently searched the trash can and found a black BB

1

gun. At the conclusion of the investigation, Vigil was arrested and charged with menacing; Rios was arrested and charged as an accessory to Vigil's menacing.

¶ 4    Vigil pleaded guilty to menacing. The prosecutor mentioned that plea during opening statement in Rios's trial and then called Vigil to the stand in an effort to prove that the antecedent to Rios's crime of accessory (i.e., Vigil's menacing) had occurred. Vigil was minimally cooperative — he denied having any memory of the fight, claimed not to remember agreeing to the factual basis for his guilty plea, and failed to recall reviewing the facts of the case with his attorney. He did eventually admit signing the plea agreement, but only after the prosecutor confronted him with a copy of it and asked him to acknowledge his signature.

¶ 5    The court admitted a redacted copy of the plea paperwork, and during closing argument the prosecutor relied on it to argue that the antecedent crime of menacing had occurred. As relevant here, the prosecutor told the jurors that they were "not deciding whether or not Marty Vigil committed the menacing, because he's already stood right here in front of this judge, in this courtroom, went through a Written Waiver and Guilty Plea, and pled guilty to

menacing," and that the plea paperwork "goes to prove that [Vigil] menaced [the victim], and he placed him in imminent fear of serious bodily injury[.]"

¶ 6 The jury found Rios guilty of accessory to menacing.

## II. Admission of Guilty Plea

¶ 7 Rios contends that the trial court erred by permitting the People to use Vigil's conviction as substantive evidence of Rios's guilt during opening statement, the prosecution's case-in-chief, and closing argument.[1] We discern no error.

## A. Preservation and Standard of Review

¶ 8 The parties disagree as to preservation. With respect to Rios's contention of evidentiary error, defense counsel objected to the introduction of "evidence of the fact that Mr. Marty Vigil pled guilty," arguing that "it seems like [the prosecutor] is using the guilty plea in an attempt to prove the underlying charge of

---

[1] Rios also asserts, without supporting authority or a developed argument, that the prosecutor "repeatedly used Mr. Vigil's admission of guilt to create an inference that, because Mr. Vigil confessed to the underlying crime, Mr. Rios must be guilty as well." Our review of the record reveals no such impropriety. And in any event, we will not consider a bald legal proposition presented without argument or development. *See* C.A.R. 28(a)(7)(B); *see also People v. Simpson,* 93 P.3d 551, 555 (Colo. App. 2003).

menacing as opposed to putting on witnesses to explain what happened." The trial court ruled that evidence of the guilty plea was admissible for precisely this purpose, because "the fact that the offense occurred and he pled guilty to it is evidence of the element that the People have to prove." The trial court offered to instruct the jury as to the limited purpose of this evidence, but defense counsel declined.

¶ 9 We review a trial court's decision to admit evidence for an abuse of discretion. *People v. Sommers*, 200 P.3d 1089, 1095 (Colo. App. 2008) (admission of evidence). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or is based on an erroneous understanding or application of the law. *People v. Esparza-Treto*, 282 P.3d 471, 480 (Colo. App. 2011). When a defendant raises a contemporaneous objection to the admission or exclusion of evidence at trial, we review for harmless error. *People v. Curren*, 2014 COA 59M, ¶ 49. An error is harmless if it did not substantially influence the verdict or affect the fairness of the trial proceedings. *Id.*

¶ 10 As for Rios's argument that the prosecutor committed misconduct by improperly relying on Vigil's guilty plea in opening

statement and closing argument, defense counsel failed to bring his concerns to the trial court's attention by raising a contemporaneous objection. We therefore review these statements for plain error and will reverse only if they were flagrantly or glaringly or tremendously improper, and "so undermine[d] the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004), *aff'd*, 119 P.3d 1073 (Colo. 2005).

### B. Analysis

¶ 11    To convict Rios of acting as an accessory, the prosecution had to prove, among other things, that Vigil committed the antecedent offense of menacing. *Roberts v. People*, 103 Colo. 250, 258, 87 P.2d 251, 255 (1938); *see also* 2 Wayne R. LaFave, *Substantive Criminal Law* § 13.6(a), Westlaw (3d ed. database updated Oct. 2019) ("[T]o constitute one an accessory after the fact . . . a completed felony must have been committed."). Vigil's guilty plea to menacing was proof that the antecedent offense actually occurred. *See Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) ("[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt

5

from the case.").  And the prosecutor used it as substantive evidence with respect to that element of the accessory charge, arguing that the jury could rely on Vigil's guilty plea as proof that he had actually committed menacing.

¶ 12     Defense counsel objected — although not during opening statement or closing argument — to the prosecution's use of Vigil's guilty plea as substantive evidence against Rios.  Although Vigil and Rios faced different charges, defense counsel pointed out that they were still codefendants, and argued that the prosecutor planned on "using the guilty plea in an attempt to prove the underlying charge of menacing as opposed to putting on witnesses to explain what happened."  This, defense counsel submitted, was at odds with the general rule that "[t]he guilty plea of a codefendant may not be used as substantive evidence of a defendant's guilt."  *People v. Rios*, 2014 COA 90, ¶ 24; *see also People v. Craig*, 179 Colo. 115, 498 P.2d 942 (1972).

¶ 13     In Colorado, this rule can be traced back to at least 1914, when the supreme court held that while "admissions of guilt made by one of several persons jointly indicted and tried for the same offense are admissible against the person making them, they are

not admissible against his codefendants, unless made in their presence and assented to by them." *Cook v. People*, 56 Colo. 477, 487, 138 P. 756, 759 (1914). The supreme court later expanded the rule beyond the context of joint trials, holding that

> [w]here two persons have been jointly indicted for the same offense, but are separately tried, a judgment of conviction against one of them is not competent on the trial of the other, inasmuch as his conviction is no evidence either of joint action or of the guilt of the accused.

*Paine v. People*, 106 Colo. 258, 261-62, 103 P.2d 686, 688 (1940) (quoting 16 C.J. *Criminal Law* § 1341, at 670 (1918)).

¶ 14      In contrast to this case, in which Vigil and Rios were charged with different crimes arising from the same incident, the defendants in *Cook* and *Paine* were "jointly indicted" and charged with the same offenses to which the codefendants pleaded guilty. Evidence of a jointly charged accomplice's guilty plea has little bearing on the defendant's guilt but carries with it a substantial risk that the jury will unfairly infer that it does.[2]  *See, e.g., United States v.*

_____

[2] We hasten to add that the rule generally only bars the introduction of an accomplice's guilty plea as *substantive* evidence of the defendant's guilt. Evidence that a testifying accomplice

7

*DeLucca*, 630 F.2d 294, 298 (5th Cir. 1980) ("The problem of a defendant's guilt by association arises primarily when the jury learns of a codefendant's guilty plea entered either before or during the trial proceedings."). From an evidentiary perspective, while an accomplice's guilty plea is, in a strict sense, relevant to the question of a defendant's guilt, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. CRE 403; *see also United States v. Griffin*, 778 F.2d 707, 710 (11th Cir. 1985).

¶ 15    But the concern that jurors will assume that "birds of a feather are flocked together," *Krulewitch v. United States*, 336 U.S. 440, 454 (1949) (Jackson, J., concurring in the judgment), largely vanishes outside the context of accomplice or co-conspirator liability. In this case, Vigil's guilty plea, as a reliable admission of factual guilt, was significantly probative of the key question whether the antecedent offense of menacing occurred. And because Vigil and Rios were not charged with the same crime or with acting as

---

pleaded guilty may still be introduced for other purposes, such as impeachment or to show acknowledgment of the accomplice's participation in the offense. *See People v. Brunner*, 797 P.2d 788, 789 (Colo. App. 1990).

accomplices or co-conspirators, the risk that the jury would infer Rios's guilt from Vigil's guilty plea was minimal.

¶ 16    Indeed, the supreme court recognized as much in *Paine* when it noted the distinction between a case involving codefendants charged with the same crime and a case that is "tried upon the theory that [the codefendant who pleaded guilty] was the principal and defendant an accessory." 106 Colo. at 263, 103 P.2d at 689. *Paine*, like every other similar Colorado case, involved the first scenario. *Id.* ("[A]lthough defendants were charged jointly in the information, the crime alleged was in its nature several, and one of them could have been acquitted and the others convicted."); *see also Craig*, 179 Colo. 115, 118-19, 498 P.2d 942, 944 (codefendant and defendant charged with conspiracy to commit murder); *Rios*, ¶ 9 (codefendant and defendant jointly charged with victim's death); *People v. Montalvo-Lopez*, 215 P.3d 1139, 1145 (Colo. App. 2008) (codefendant and defendant both charged with possession with intent to distribute cocaine they were transporting in a vehicle); *People v. Brunner*, 797 P.2d 788, 789 (Colo. App. 1990) (accomplice testified as to guilty plea involving "the same LSD with which defendant was charged with distributing").

9

¶ 17    This case, however, involves the situation that *Paine* contemplated but did not decide — a defendant who was "tried upon the theory that [Vigil] was the principal and [Rios] an accessory." 106 Colo. at 263, 103 P.2d at 689. And while no Colorado case has squarely addressed the admissibility of a codefendant's guilty plea for substantive purposes in this context, *Paine*'s clear implication is that the evidentiary calculus is different when the charges against the two defendants do not allege that they acted in concert to commit the same offense.

¶ 18    While we acknowledge that a guilty plea from a defendant's "co-defendant or co-conspirator," *Brunner*, 797 P.2d at 789, may generally not be used as substantive evidence against the accused, we read those cases in their historical context as applying the prohibition only to situations in which the defendant and codefendant have been charged as accomplices, complicitors, or co-conspirators in the same offense. Because Vigil and Rios were charged with different crimes stemming only from the same general set of events, they were not "codefendants" in the sense contemplated by the supreme court in *Paine*. As a result, we discern no error, plain or otherwise, arising from the prosecution's

reliance on Vigil's guilty plea to prove that he committed the antecedent offense to Rios's charge of accessory to menacing.

## III.    Right to Remain Silent

¶ 19    Rios contends that the trial court erroneously denied his motions for a mistrial after the prosecutor elicited testimony from an investigating officer and from Rios himself that, when asked, Rios had not explained his actions to the police.  Rios also contends that the prosecutor committed misconduct during closing argument by commenting on Rios's lack of response to the investigating officer.  Alternatively, Rios contends that we should remand the case for further factual findings because the record does not reveal when the investigating officer informed him of his constitutional right to remain silent.

¶ 20    We address each contention in turn and conclude that the trial court did not abuse its discretion by denying the motions for a mistrial.

### A.    Preservation and Standard of Review

¶ 21    The parties partially disagree as to whether this argument is preserved.  Rios argues in favor of preservation, pointing out that "defense counsel objected, three times, and requested a mistrial

11

after the government repeatedly commented or inquired about Mr. Rios' constitutional right to remain silent." The People agree that defense counsel moved for a mistrial during the investigating officer's testimony. However, they contend that Rios did not preserve his objection to the prosecutor's closing argument. The People do not address preservation with respect to Rios's own testimony.

¶ 22 We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion and will not disturb its ruling absent an abuse of discretion and prejudice to the defendant. *See People v. Santana*, 255 P.3d 1126, 1130 (Colo. 2011). Because a mistrial is "the most drastic of remedies," it is "only warranted where the prejudice to the accused is too substantial to be remedied by other means." *People v. Abbott*, 690 P.2d 1263, 1269 (Colo. 1984).

¶ 23 Because Rios's attorney objected to the investigating officer's testimony and to the questions that the prosecutor asked Rios on cross-examination, we review those contentions for harmless error. However, we apply plain error review to the prosecutor's closing

argument because defense counsel did not contemporaneously object to the statements that Rios now argues were improper.

## B.    Applicable Law

¶ 24    A prosecutor is prohibited from commenting on a defendant's constitutionally protected right to remain silent during trial. U.S. Const. amend. V; Colo. Const. art. II, §§ 18, 25; *People v. Herr*, 868 P.2d 1121, 1124 (Colo. App. 1993). A prosecutor should also avoid making comments regarding a defendant's pre- or post-arrest silence. *People v. Hardiway*, 874 P.2d 425, 427 (Colo. App. 1993); *Herr*, 868 P.2d at 1124. "However, the Fifth Amendment protections do not apply to conduct that occurs in a noncustodial setting." *People v. Thomas*, 2014 COA 64, ¶ 25. Even if the prosecutor introduces the subject of pre-arrest silence, reversible error exists only when the prosecutor uses the defendant's silence as a means of implying guilt. *Hardiway*, 874 P.2d at 427; *Herr*, 868 P.2d at 1124.

## C.    Analysis

¶ 25    At the threshold, Rios contends that because the record does not reveal whether he received *Miranda* warnings before invoking

13

his constitutional right to remain silent, we should remand the case for further factual findings. We disagree.

¶ 26 A defendant may be impeached with "his constitutionally protected silence before receiving *Miranda* warnings, whether that silence occurred before or after arrest." *People v. Chavez*, 190 P.3d 760, 766 (Colo. App. 2007).

¶ 27 The investigating officer testified that he and several other officers approached Rios "to try to get information," but that Rios declined to answer his questions. The prosecutor asked whether "at this point in time, was the defendant seated on the ground against one of the basketball posts?" This was a reference to a photo taken later in the investigation, which depicted Rios in handcuffs and seated against a basketball post. The officer answered, "No. Not at that time." The prosecutor then asked, "[A]t some point was he?" To which the investigating officer responded, "Yeah."

¶ 28 Thus, Rios was not under arrest or in custody when he told police he did not want to answer questions, and his pre-arrest silence could be used to impeach him. *See id.*

14

### 1.    Investigating Officer's Testimony

¶ 29    We next address Rios's contention that his "silence was not relevant" and the prosecutor used his silence "to create an implication that [he] was guilty because he refused to speak with the investigating officers . . . ."

¶ 30    During direct examination the investigating officer and prosecutor engaged in the following colloquy:

> Q. And now specifically with regard to the defendant, was he cooperative with you?
>
> A. No, he wasn't.
>
> Q. What was his demeanor like towards you?
>
> A. Just that he didn't wish to answer any of my questions, including giving me his name.

¶ 31    Defense counsel objected and moved for a mistrial because the testimony was "directly commenting on Mr. Rios' . . . right to remain silent . . . ." Finding that the officer's answer was not responsive to the question, the trial court sustained the objection but denied the request for a mistrial. Defense counsel declined the trial court's offer to instruct the jury to disregard the question.

¶ 32    Because the trial court sustained the objection to the challenged testimony and defense counsel declined the trial court's

offer to further instruct the jury, there was no error.  CRE 611.

Therefore, the trial court properly denied the motion for a mistrial.

*See People v. Vigil*, 718 P.2d 496, 506 (Colo. 1986) (affirming denial

of motion for mistrial where defense counsel declined trial court's

offer to instruct the jury to disregard "forbidden words").

## 2.    Rios's Testimony

¶ 33    During the prosecutor's cross-examination of Rios, in response

to Rios's description of the events leading up to his arrest, the

prosecutor asked, "[T]his is actually the first time that you've

actually brought any of this to anybody's attention, right?"  Defense

counsel objected ("commenting on a constitutional right"), and the

trial court sustained the objection.  The prosecutor then continued

his cross-examination of Rios:

> Q. So as far as being contacted at Sunrise Park
> . . . there was a number of officers there, right?
>
> A. Yeah.
>
> Q. And a few of them tried to get some
> information from you?
>
> A. Yes.
>
> Q. And you refused to speak with them?
>
> A. Yes.

¶ 34 Defense counsel renewed the objection and, after it was overruled, requested a bench conference and unsuccessfully moved for a mistrial.

¶ 35 As noted, "Fifth Amendment protections do not apply to conduct that occurs in a noncustodial setting." *Thomas*, ¶ 25. Our review of the record reveals that Rios was not in custody when he "refused to speak" with the investigating officers. Thus, contrary to Rios's contention, admission of his silence did not violate his constitutional right against self-incrimination because his silence did not occur during a custodial interrogation.

### 3. Closing Argument

¶ 36 We next address Rios's argument that the prosecutor violated his right to remain silent when he "argued that Mr. Rios was guilty of the crime alleged because he refused to provide the police with information."

¶ 37 During closing argument, the prosecutor argued that the police had a "[d]ifficult time getting any information, even identifying information, out of the defendant and Marty Vigil. . . . In fact, [Rios and Vigil] thought it was humorous. . . . Thought it was

17

funny to impede his investigation when there was just chaos that broke out." Defense counsel did not object.

¶ 38 The parties stipulated to the fact that Rios "refuse[d] to give his name," and the prosecutor's argument that the police had a difficult time getting information specifically referred to "identifying information." Under these circumstances, we perceive no plain error.

## IV. Cumulative Error

¶ 39 We conclude that the trial court did not err by admitting the evidence of the codefendant's guilty plea or by denying requests for a mistrial based on the alleged violations of Rios's right to remain silent. Because there was no error, there can be no cumulative error. *People v. Shanks*, 2019 COA 160, ¶ 76 (the cumulative error doctrine applies only if numerous errors were committed, not merely alleged).

## V. Conclusion

¶ 40 The judgment is affirmed.

JUDGE ROMÁN and JUDGE GRAHAM concur.

18