23CA0038 Peo v Chahan 01-29-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0038
City and County of Denver District Court No. 20CR3352
Honorable Jay S. Grant, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Steven J. Chahan,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE MOULTRIE
Dunn and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Steven J. Chahan, appeals the judgment of conviction entered after a jury found him guilty of three counts of attempted extreme indifference murder and one count of illegal discharge of a firearm.  We affirm.

## I.    Background

¶ 2    During a road rage incident on Interstate Highway 25 in May 2020, the driver of a car fired at least four shots at another car that contained three people.  No one was injured.  The driver of the car that was shot at, Benjamin Bauer, identified the shooter's vehicle as a dark gray Volkswagen EOS and provided two potential license plate numbers.  During their investigation, the police discovered that Chahan was the registered owner of a gray Volkswagen EOS with a license plate that almost matched one of the numbers from Bauer (the sequence had an "I" rather than Bauer's "1").  Further, Chahan was wearing an ankle monitor at the time of the offense that placed him at the location of the shooting.  About a week after the incident, Bauer identified Chahan from a six-person photo lineup as the person who had fired the shots.  In making the identification, Bauer said that he "recall[ed] a rounder face" and

that the person in the third photo "resembles the nose of the driver seen during the incident."

¶ 3 Before his trial, Chahan moved to suppress Bauer's identification of him from the photo lineup as unduly suggestive. The trial court denied the motion to suppress the identification, finding that the lineup was not unduly suggestive. The court noted that nothing in Chahan's photo made him stand out from the rest of the photos, all the photos included people of Asian descent, which was how Bauer and one of the other victims had described the shooter, and the sixth photo, which had a different color background, didn't draw the viewer's attention to Chahan's photo.

¶ 4 Following a two-day trial, the jury found Chahan guilty of the offenses described above.

¶ 5 On appeal, Chahan contends that his convictions should be reversed because (1) the trial court erred by denying his motion to suppress Bauer's pretrial identification of him; (2) the trial court erred when it first denied his motion for a mistrial after the prosecutor improperly questioned a police detective about Chahan's invocation of his right to silence and then gave a defective curative instruction to address the improper question; (3) the prosecutor

committed misconduct during voir dire; and (4) the cumulative effect of these errors warrants reversal of his convictions. As discussed in detail below, we reject these contentions.

## II. The Photo Lineup Was Not Unduly Suggestive

¶ 6 Chahan argues that the court erred by denying his motion to suppress Bauer's photo lineup identification. We disagree.

### A. Applicable Law and Standard of Review

¶ 7 "A defendant is denied due process when an in-court identification is based upon an out-of-court identification which is so suggestive as to render the in-court identification unreliable." *People v. Borghesi*, 66 P.3d 93, 103 (Colo. 2003). To determine whether a pretrial photo identification is admissible, courts apply a two-part test. *Id.*

¶ 8 First, the defendant must show that the photo lineup was impermissibly suggestive. *Id.* Relevant factors include the number of photos in the lineup, the manner of presentation by police, and the details of the photographs themselves. *Id.* at 103-04. The photos should be "matched by race, approximate age, facial hair, and a number of other characteristics." *Bernal v. People*, 44 P.3d 184, 191-92 (Colo. 2002) (citation omitted).

¶ 9    Second, if a court finds that the photo lineup was impermissibly suggestive, the prosecution must show that the witness's identification was nevertheless reliable under the totality of the circumstances.  *Id.*

¶ 10   When the photo lineup is part of the court record, an appellate court is in the same position as the trial court to review the details of the photographs and determine, de novo, whether the photo lineup itself was impermissibly suggestive.  *People v. Shanks*, 2019 COA 160, ¶ 50.

## B.    Analysis

¶ 11   Chahan's photo was third in the photo lineup.  Chahan contends, as he did at the pretrial hearing, that the lineup was unduly suggestive because the last three photos in the lineup were not comparable to the first three photos.  In support, he notes that the person in the fourth photo was balding; the person in the fifth photo, unlike the people in the other photos, appeared not to be of East Asian descent; the appearance of Chahan's nose was dissimilar to the appearance of the noses of the other individuals in the photo lineup; and the background for the sixth photo was a

4

different color.  Thus, he argues, the court erred by concluding that the lineup was not impermissibly suggestive.  We disagree.

¶ 12    The principal question is whether the photo of Chahan stood out from the other five photos, indicating that he was more likely to be the perpetrator.  *See Bernal*, 44 P.3d at 191.  If Chahan doesn't meet this burden, the claim fails, and we need not address whether the identification was nonetheless reliable.  *See Borghesi*, 66 P.3d at 103.

¶ 13    Here, the six photos in the lineup all depict men of about the same age and Asian ethnicity, with relatively short hair, similar eye and skin coloring, and similarly shaped noses.  That the photos were not identical does not make the lineup impermissibly suggestive.  There was nothing about the array or the presentation of the photos that made Chahan's photo stand out from the rest so as to make it more likely for the witnesses to choose him as the offender.

¶ 14    Contrary to Chahan's assertion that the different colored background in the sixth photo made it stand out such that the lineup could be considered unduly suggestive, as the trial court noted, that difference would have made it more likely that the

witness would choose the person in the sixth photo, not Chahan in the third photo. Thus, the different background for the sixth photo doesn't alter our conclusion that the lineup wasn't impermissibly suggestive.

¶ 15 Because we conclude that Chahan has failed to establish that the lineup was impermissibly suggestive, this claim fails, and we need not address the second part of the test or Bauer's in-court identification of Chahan. *See id.*

### III. We Discern No Reversible Error in the Court's Handling of the Prosecutor's Questioning of the Detective

¶ 16 Chahan raises two claims with respect to the prosecutor's questioning of a police detective — (1) the trial court erred when it denied his motion for a mistrial after the prosecutor asked the police detective whether Chahan had agreed to talk to him following his arrest; and (2) the court erred when it gave a deficient curative instruction that told the jury to disregard the prosecutor's question, but not the answer. We perceive no reversible error.

#### A. Additional Background

¶ 17 The police detective investigating the case testified that he was notified when Chahan was placed in custody. The detective

responded to where Chahan was being held in custody. After the detective identified Chahan in court as the person he saw in custody, the prosecutor asked the detective, "[D]id Mr. Chahan wish to speak to you?" And the detective answered, "No, he did not."

¶ 18    Chahan objected and moved for a mistrial, arguing that the question created a negative inference as to his guilt because it let the jury know that he had invoked his right to remain silent.

¶ 19    The court found that the prosecutor's question was inappropriate, knowing that Chahan had invoked his right to remain silent at the time of his arrest. However, the court denied the motion for a mistrial, noting that such a remedy was too drastic and, instead, offered to cure the error by instructing the jury to disregard the question and any inference that could be made from it.

¶ 20    Chahan objected to the court's proposed remedy and insisted that a mistrial was appropriate. However, he didn't object to the court's proposed curative instruction.

¶ 21    The court then instructed the jury as follows:

> The jury is instructed at this time to disregard the last question made by the District Attorney to this detective, and that – and you are to

conduct your – your analysis of the case not –
giving that no weight at all, as though it – you
never heard it.  Do you understand?

¶ 22    The jury affirmatively indicated it understood the instruction.

B.    The Court Did Not Err By Denying Chahan's Request for a
Mistrial

¶ 23    Although the prosecutor's question to the detective was improper because it asked the detective to comment on Chahan's invocation of his right to remain silent, *see People v. Rios*, 2020 COA 2, ¶ 24 ("A prosecutor should . . . avoid making comments regarding a defendant's pre- or post-arrest silence."), we conclude that the trial court didn't abuse its discretion by denying Chahan's motion for a mistrial.

1.    Applicable Law and Standard of Review

¶ 24    We won't disturb a trial court's decision to deny a motion for a mistrial absent an abuse of discretion and prejudice to the defendant.  *See People v. Santana*, 255 P.3d 1126, 1130 (Colo. 2011).  Because a mistrial is "the most drastic of remedies," it is "only warranted where the prejudice to the accused is too substantial to be remedied by other means."  *People v. Abbott*, 690 P.2d 1263, 1269 (Colo. 1984).

8

## 2. Analysis

¶ 25 Here, the prosecutor's question and the detective's answer were brief and Chahan's silence was never referenced again or used by the prosecutor to imply his guilt. Further, after Chahan objected, the court instructed the jury that it should disregard the question and not consider it further. Under these circumstances, we conclude that the court didn't abuse its discretion when it declined to grant Chahan a mistrial. The court's instruction was sufficient to cure any prejudice from that brief reference to Chahan's right to remain silent. Thus, because we presume the jury understood and followed the court's instruction, *see People v. Abdulla*, 2020 COA 109M, ¶ 58, and a mistrial is a drastic remedy to be applied only when the prejudice cannot be remedied by other means, *see Abbott*, 690 P.2d at 1269, we perceive no abuse of discretion in the trial court's denial of Chahan's mistrial motion.

### C. The Court Did Not Plainly Err in Giving the Curative Instruction

¶ 26 Nevertheless, Chahan argues that the court's curative instruction was insufficient to remedy the prejudice because it failed to tell the jury to disregard the detective's answer — it only

9

said to disregard the question. We agree that the court's instruction was flawed because it didn't tell the jury to disregard the detective's answer. However, because Chahan didn't object to the instruction as given, reversal is only required if the error constitutes plain error.

¶ 27     Under the plain error standard, we will reverse only if we conclude that an error (1) was obvious and (2) so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Hagos v. People*, 2012 CO 63, ¶ 14; *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005). Plain errors must therefore be particularly egregious such that they seriously affect the fairness, integrity, or public reputation of judicial proceedings and cast serious doubt on the judgment of conviction. *Hagos*, ¶¶ 18-19. Reversals under this standard "must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time." *Id.* at ¶ 23.

¶ 28     Applying this standard, we can't conclude that the court committed plain error by instructing the jury as it did. The error in failing to tell the jury to disregard the detective's answer, even if plain, was not substantial. The court's instruction told the jury

that it should disregard the question and analyze the case as though it had never heard it.  Thus, that instruction implicitly conveyed the message that the jury should also ignore the answer.  Further, Chahan's invocation of his right to silence was never mentioned again or ever used by the prosecution to infer Chahan's guilt.  Accordingly, we conclude that this error was not substantial enough to impact the fairness of the trial and rise to the level of plain error.  Therefore, reversal isn't required.

## IV.    There Was No Prosecutorial Misconduct

¶ 29    Chahan next contends that the prosecutor's use of hypotheticals during voir dire — about an altercation in a grocery store and a witness who recalled some facts incorrectly — constituted misconduct that requires reversal of his convictions because they improperly informed the jury about the prosecution's version of the facts of the case.  We disagree.

### A.    Additional Background

¶ 30    During voir dire, the prosecutor engaged in discussions with potential jurors using hypotheticals.

¶ 31    While engaging one of the potential jurors, the prosecutor said, "Let's say I am going into a Safeway.  I am just wandering around,

and I'm not paying attention.  I bump into someone, and I'm like, [']I am so sorry[']; and that someone says, [']What the heck[?'] and punches me in the face.  Is that a reasonable response?"  The potential juror indicated that it was not a reasonable response.  The prosecutor then presented that same hypothetical with varying details to other potential jurors, and the jurors' answers varied depending on the particular facts of the hypothetical.

¶ 32     The prosecutor then changed the hypothetical and asked some potential jurors whether they would find a witness credible if the witness misdescribed an offender or their clothing.  The jurors' answers, again, varied based on the details of the hypothetical.

¶ 33     Chahan didn't object to the prosecutor's hypotheticals during voir dire.

### B.     Applicable Law and Standard of Review

¶ 34     We engage in a two-step analysis when reviewing claims for prosecutorial misconduct.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances.  *Id.* Second, we decide whether such actions warrant reversal under the proper standard of review.  *Id.*  And, here, because Chahan didn't

object to any of the prosecutor's comments that he now challenges on appeal, we reverse only if plain error occurred.  *See Hagos*, ¶ 14.

¶ 35  The purpose of voir dire is to allow the parties to reveal and address the beliefs of potential jurors that could cause them to be biased in a manner that prevents one of the parties from receiving a fair trial.  *People v. Garcia*, 2022 COA 144, ¶ 18.  However, counsel isn't permitted to educate potential jurors on a particular theory of the case.  *Edwards v. People*, 418 P.2d 174, 177 (Colo. 1966).  A prosecutor engages in prosecutorial misconduct during voir dire when she "intentionally use[s] the voir dire to present factual matter[s] which the prosecutor knows will not be admissible at trial or to argue the prosecution's case to the jury."  *People v. Adams*, 708 P.2d 813, 815 (Colo. App. 1985) (emphasis omitted) (quoting ABA Standards for Criminal Justice § 3-5.3(c) (2d ed. 1980)).

## C.  Analysis

¶ 36  Contrary to Chahan's contention, the hypotheticals posed by the prosecutor during voir dire didn't give the jury specific insight into the prosecution's theory of the case.  First, the hypotheticals didn't mirror the facts of this case.  Chahan was charged with attempted extreme indifference murder, and his theories of defense

13

were mistaken identity and that he wasn't the person who fired the shots. Therefore, whether his actions were reasonable wasn't an issue in the case, and the prosecutor's hypotheticals, while perhaps irrelevant, weren't improper indoctrination.

¶ 37 Second, the prosecutor's variations of the hypothetical about the credibility of a witness who inaccurately described the details of an event didn't draw the jurors' attention to any particular facts of the case. Rather, the prosecutor generically probed the potential jurors about how they would assess any witness's credibility.

¶ 38 Given the differences between the hypotheticals and the facts of the case, it is apparent that the prosecutor's questions weren't intended to instruct potential jurors about the case or encourage them to prejudge the facts. Accordingly, we conclude that the prosecutor's use of these hypotheticals wasn't improper.

## V. There is No Cumulative Error

¶ 39 Finally, Chahan argues that reversal is warranted under the cumulative error doctrine. However, because we've identified only one error, we need not conduct a cumulative error analysis. *See People v. Conyac*, 2014 COA 8M, ¶ 152 ("The doctrine of cumulative

14

error requires that numerous errors be committed, not merely alleged.").

## VI. Disposition

¶ 40　The judgment of conviction is affirmed.

JUDGE DUNN and JUDGE TAUBMAN concur.